[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife commenced this action for a dissolution of the parties' marriage on the ground of irretrievable breakdown by complaint returnable November 24, 1992. She also seeks alimony and other relief as on file. The defendant husband appeared by counsel, filed a claim for the limited contested list and claimed solely by way of relief a dissolution of the marriage. Both parties were represented by counsel throughout the proceedings. At trial, both parties testified and filed financial affidavits and written proposed orders.
From the evidence, the court finds as follows:
The plaintiff wife, Sherryl E. Foley, whose birth name was Sherryl E. Smith, and whose prior married name was Sherryl E. Michaud, married the defendant husband Robert Foley on September 11, 1987 at Ballouville, Connecticut. She has resided continuously in this state for at least one year before the date of the complaint, October 22, 1992. There were no children born issue of the marriage and none were born to the wife since the date of the marriage. Neither party is a recipient of public assistance. All statutory stays have expired and this court has jurisdiction.
The plaintiff is 45 years of age, a high school graduate, with several semesters of college, taking psychology and sociology courses. She expects to obtain a two-year degree in January 1995. She suffers from a thyroid condition for which she takes medication daily. She also takes an anti-depressant regularly. She periodically seeks treatment at a mental health clinic.
She has been employed as a homemaker-companion for the CT Page 2904 past six years. She earns $214[1] per week gross and $166 per week net for an average 30-hour week. She expects to get a higher paying job when she completes her degree.
The defendant is 46 years of age, is a high school graduate and has taken additional schooling on the job. He has been regularly employed as a nuclear mechanic for the past three years and earns almost $16 per hour for a 40-hour week. He has had substantial overtime recently at time and a-half pay, which he testified will be reduced or eliminated. With his overtime averaged in for the 13 weeks before the date of trial, he grossed $727 per week with a net of $533. His health is good; he admits to drinking four to five cans of beer an evening and more on the weekends.
This marriage of about six and one-half years' duration was dysfunctional almost from the very start. The defendant drank constantly, and the parties argued. There was violence perpetrated upon the plaintiff by the defendant. He also threatened her and verbally abused her. The marriage was punctuated by several separations, the husband leaving the home on each occasion, the last of which was in March, 1991. As of the date of trial, the parties lived apart more than together.
It is clear that the marriage is irretrievably broken down, and the court concludes that although the wife knew that the husband was a drinking man at the time of the marriage, the actions and behavior of the husband were the major reason for the breakdown and disruption of the marriage.
Aside from their motor vehicles, the parties acquired no significant assets during the marriage. The home the parties lived in with the husband's son and wife's daughters (all from prior marriages) is solely owned by the wife and was obtained in her divorce settlement.
The parties pooled their earnings and income during the time they resided together and used the funds for family expenses, and the wife cared for her stepson and worked throughout the time the parties resided together. During this time, the husband's employment was subject to periodic layoffs.
It is evident that the husband's employability, income, vocational skills and earning capacity exceed that of the wife. Considering that he now resides with his son, he CT Page 2905 shows a net surplus of $90 per week over his expenses.[2] When the present alimony order of $45 per week is factored in and adjusted for federal taxes, his surplus of income over expense is approximately $60 per week.
It is also clear that the wife, whose household includes her daughter, has a net shortfall of her individual expenses over income of about $70 per week. The court reaches this conclusion by comparing her net income of $166 from employment, the alimony and child support payments of $45 and $100 respectively, which total $311 per week, with her weekly expenses of $431, and deducting the claimed $50 payment for her auto loan, which she is not in fact paying. In addition, she shows $4319[3] in liabilities on Schedule 3 of her financial affidavit, on which she makes sporadic, if any, payments, as revealed in her cross-examination. Despite the discrepancies in her affidavit and testimony, the court believes that the wife will require assistance to meet her needs for a reasonable time until she can become self sufficient. The court also believes that that reasonable time should be about six months after she obtains her degree, or July 1, 1995. The court also finds that there is an arrearage due and owing the plaintiff from the defendant of $140 on account of the alimony pendente lite order; and, further finds that the hospital small claims judgment balance of $60, the Colonial National Bank and First Bank credit balances of about $2569 are joint liabilities.
The plaintiff also seeks $2500 in counsel fees from the defendant, which the court finds to be well in excess of what is reasonable for a case of this kind; besides, the court must also consider the defendant's ability to pay as required by General Statutes 46b-62 and the statutory criteria contained in46b-82, and concludes that $750 in attorney's fees is fair and reasonable under these circumstances, as a denial of attorney's fees in toto would undermine the financial orders hereinafter entered.
Having considered the evidence and the criteria set forth in General Statutes 46b-62, 46b-81 and 46b-82, the court orders:
(1) A decree dissolving the marriage shall enter on the ground of irretrievable breakdown.
(2) The defendant shall pay to the plaintiff the sum CT Page 2906 of $45 per week as periodic alimony, until July 1, 1995. Said alimony shall terminate sooner upon the wife's death, remarriage or pursuant to the provisions of General Statutes 46b-86 (b), but shall be otherwise nonmodifiable as to term or amount and shall be taxable income to the plaintiff and deductible by the defendant.
(3) The defendant shall pay the arrearage of $140 at the rate of $5 per week until paid.
(4) The defendant shall pay to the wife lump sum alimony of $900 as his portion of the joint credit card liabilities payable at the rate of $15 per week until paid, and $750 in attorney's fees at the rate of $10 per week until paid.
(5) The alimony and attorney's fee orders totaling $75 per week shall be secured by a contingent wage execution.
(6) The plaintiff shall pay all of the liabilities shown on Schedule 3 of her financial affidavit and save the defendant harmless therefrom.
(7) The defendant shall pay the balance due on the hospital judgment, and save the plaintiff harmless therefrom.
(8) Each shall have and own the personal property in his or her possession free of the other's claim.
(9) The plaintiff shall own her real property known as No. 30 Sunnyside Avenue, Norwich, Connecticut, free of the defendant's claims.
Teller, J.